IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ROBERT J. ALLEN                                                                                       PLAINTIFF

      v.                                      Civil No. 10-5008

SHERIFF TIM HELDER; and
OFFICER SHIPLEY                                                                                    DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Robert J. Allen (hereinafter Allen), filed this action pursuant to the provisions of 42 U.S.C. § 1983. He names as Defendants: Sheriff Tim Helder and Officer Shipley. Allen proceeds *pro se* and *in forma pauperis*.

Allen is currently incarcerated in the Missouri Eastern Correctional Center in Pacific, Missouri. The events that are the subject of this lawsuit occurred when Allen was extradited to the State of Arkansas and incarcerated at the Washington County Detention Center (WCDC) in Fayetteville, Arkansas. Specifically, Allen alleges that he was erroneously charged with failure to appear and that he was exposed to the human immunodeficiency virus (HIV) at the WCDC.

Defendants have filed a summary judgment motion (Doc. 33). To assist Allen in responding to the summary judgment motion, I propounded a questionnaire (Doc. 38). Allen filed a timely response (Doc. 39). The motion is now ready for decision.

### I. Background

On February 18, 2009, Arkansas Governor Beebe executed a requisition for Allen's apprehension and for his delivery to Sheriff Helder. Plaintiff's Response (Doc. 39) at ¶ 1 (hereinafter Resp.). The charge against Allen was failure to appear on an underlying charge of

-1-

violation of the Arkansas Hot Check Law, a class C felony. Defendants' Exhibit 1-A (hereinafter Defts' Ex). On March 5, 2009, Kansas Governor Sebelius executed a rendition warrant directing that Plaintiff be apprehended, secured, and delivered to the custody of Sheriff Helder, or his duly authorized agent, to face charges in Arkansas. Id. at ¶ 2.

On March 10th, Rhonda Arnold, Extradition Coordinator for Governor Sebelius, sent a letter to Sheriff Horton, Crawford County Sheriff's Department in Girard, Kansas, with directions on how to proceed to make Allen available to an agent of Sheriff Helder. Defts' Ex. 1-C. At the time, Allen states he was being held in Labette County Jail in Oswego, Kansas, and not in Crawford County, Kansas. Resp. at ¶ 3. He also maintains his Kansas attorney had filed a writ of habeas corpus in the Labette County Court that "was ignored." Id. at ¶ 2.

On May 22nd, Washington County was notified via a National Crime Information Center (NCIC) terminal that the Governor's warrant had been served on Allen and that Washington County had ten business days to transport him. Resp. at ¶ 4. On May 28th, Allen was booked into the Washington County Detention Center (WCDC) on the failure to appear charge and on multiple holds for other departments. Id. at ¶ 5. Allen questions how he was charged with failure to appear when he was "never physically present to be booked the first time." Id.

On December 2nd, Allen was transferred to the State Hospital. Resp. at ¶ 6. He was booked back into the WCDC on January 5, 2010. Id. at ¶ 7. On January 7th, Allen entered a guilty plea for two felonies, failure to appear and violation of the Arkansas Hot Check Law. Id. at ¶ 8.

On January 13th, Allen signed a voluntary consent to return to the State of Kansas to answer three felony and one misdemeanor charge. Resp. at ¶ 9. On January 15th, Allen was released to Labette County, Kansas. Id.

Deputy Shipley was employed at the WCDC during all times relevant to this case. Defts' Ex. 2 at ¶ 1. As part of his duties, Deputy Shipley would give inmates haircuts and shaves upon their request. Resp. at ¶ 11. Inmates at the WCDC are not required to get haircuts or shaves and are only given haircuts or shaves at their request. Defts' Ex. 2 at ¶ 6; Resp. at ¶ 14.

According to Shipley, in accordance with customary practices and the Washington County policies, he would clean the clippers with disinfectant between each haircut and shave. Defts' Ex. 2 at ¶ 3. Shipley states that he never cut an inmate while giving him a shave or haircut that he knew had HIV. Id. at ¶ 4. Shipley indicates that Allen never objected to being given a haircut or shave and never complained about the cleanliness of the clippers being used. Defts' Ex. 2 at ¶¶ 7-8.

According to Allen, on the day in question, Shipley did not clean the clippers a single time. Resp. at ¶ 12. Allen indicates Shipley stated the clippers had been dropped and were "pinching peoples necks, therefore opening the skin." Id. at ¶ 13. When he questioned Shipley about the clippers, Allen stated that Shipley "start[ed] yelling about being in line if you don't want cuts or shaves." Id. at ¶ 15. Allen indicates he also questioned the fact that the clippers were not being cleaned in between cuts and it made Shipley angry. Id. at ¶ 16.

Allen was in line to receive a shave or haircut after the clippers were contaminated with blood from an inmate he believed was HIV positive. Resp. at ¶ 18. Allen could have declined a shave or haircut, but, despite his knowledge that the clippers were contaminated, he went ahead and had a haircut and/or shave. Id.

On November 12th, Allen was treated at the Missouri Department of Corrections where he underwent a physical examination and a complete medical history was taken. Resp. at ¶ 17. He received a mandatory HIV test and, on November 23rd, was informed the test was negative. Id.

Allen was asked how Sheriff Helder was personally involved in the violation of Allen's constitutional rights. He responded: "It's a jail['s] responsibility to provide a safe and secure environment [for] all offenders." Resp. at ¶ 20.

## II. Applicable Standard

"Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We view all evidence and inferences in a light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

## III. Discussion

Defendants first argue they have been sued in their official capacities only. As there is no evidence of an unconstitutional policy or custom, they maintain they are entitled to judgment in their favor. Second, to the extent the complaint is construed against Defendants in their individual capacities, they maintain there were no constitutional violations. Finally, they contend they are entitled to qualified immunity.

### A. Individual versus Official Capacity Claims

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. West v. Atkins, 487 U.S. 42, 48 (1988); Dunham v. Wadley, 195 F.3d 1007, 1009 (8th Cir.1999). The deprivation must be

intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. Daniels v. Williams, 474 U.S. 327 (1986); Davidson v. Cannon, 474 U.S. 344 (1986).

Under § 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. In Gorman v. Bartch, 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit discussed the distinction between individual and official capacity suits. As explained by the Gorman case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24-27, 112 S. Ct. at 361-62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25-27, 112 S. Ct. at 362.

*Id.* at 914.

The Eighth Circuit has advised plaintiffs to specifically plead whether government agents are being sued in their official or individual capacities to ensure prompt notice of potential personal liability. Nix v. Norman, 879 F.2d 429, 431 (8th Cir. 1989); see also Andrus v. Arkansas, 197 F.3d 953 (8th Cir. 1999). When the plaintiff fails to state whether he is suing an official in his individual capacity, the Eighth Circuit has construed the claim to be against the official in his official capacity only. See Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999).

In this case, Plaintiff is proceeding *pro se*. While his complaint does not specify he is bringing both individual and official capacity claims, in response to the summary judgment motion, he indicates he is asserting claims against the Defendants in both capacities. Resp. at ¶ 22. Given

that the distinction is difficult for even those with legal training to understand, see e.g., Vanhorn v. Oelschlager, 502 F.3d 775, 779 (8th Cir. 2007)(state officials misconstrued the differences between official and individual capacity claims and the immunities available), and Plaintiff's clarification in his summary judgment response, I believe the complaint should be construed as asserting both individual and official capacity claims.

### B. Extradition/Arkansas Charges

In his summary judgment response, Plaintiff indicates he is not questioning the extradition to Arkansas. Resp. at ¶ 22(B). Instead, he is challenging a "ghost book-in" to the WCDC, on some unspecified date, when he was not physically present in the state to be notified of the court date on the hot check charge. Plaintiff maintains that he was not aware of this court date and his non-appearance resulted in the failure to appear charge. In other words, Plaintiff maintains the failure to appear charge was invalid because he was unaware of his court date on the hot check violation.

In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court held that a claim for damages for "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable until "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck, 512 U.S. 486-87.

Plaintiff pled guilty on the failure to appear charge. The conviction has not been reversed, expunged, or otherwise declared invalid. Heck therefore precludes this claim.

### C. Exposure to HIV

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and

general well-being." County of Sacramento v. Lewis, 523 U.S. 833 (1998)(citation omitted). "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). The "deliberate indifference standard is the appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care, and reasonable safety." Butler v. Fletcher, 465 F.3d 340, 345(8th Cir. 2006).

In Helling, the Supreme Court held that the Eighth Amendment protected against not only immediate present harm but also against future harm. Id., 509 U.S. at 32. It held an Eighth Amendment claim could be stated where an inmate alleged that prison officials had, with deliberate indifference, exposed him to a serious, communicable disease that posed "an unreasonable risk of serious damage to [the prisoner's] future health." Id. at 34.

The Helling case involved a claim of exposure to environmental tobacco smoke (ETS). The Court said McKinney should be provided with an opportunity to prove his allegations, which would "require him to prove both the subjective and objective elements necessary to prove an Eighth Amendment violation." Helling, 509 U.S. at 35. With respect to the objective factor, the Court noted "McKinney must show that he himself is being exposed to unreasonably high levels of ETS." Id. The Court stated that more was required:

> than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

Id. With respect to the subjective component, deliberate indifference, it was noted that consideration could be given to the realities of prison administration and the policies of the prison facility. Id.

-7-

In the context of the spread of infections disease, the Plaintiff must show a "pervasive risk of harm to inmates of contracting the AIDS virus," Marcussen v. Brandstat, 836 F. Supp. 624, 627 (N.D. Ia. 1993), and that there is "a failure of prison officials to reasonably respond to that risk," Glick v. Henderson, 855 F.2d 536, 539-40 (8th Cir. 1988).

HIV is the virus that can lead to Acquired Immune Deficiency Syndrome (AIDS).[1]  HIV "is not spread by causal contact such as sharing sinks or toilets.  Rather it is commonly spread through contact with blood or semen." Bolton v. Goord, 992 F. Supp. 604, 628 (S.D.N.Y. 1998).  Other common means of transmission of HIV are:  not using a condom when having sex with a person who has HIV; having multiple sex partners or the presence of other sexually transmitted disease can increase the risk of infection; sharing needles syringes, rinse water, or other equipment used to prepare illicit drugs for injection; and being born to an infected mother.[2]  Less common modes of transmission include:  being stuck with an HIV contaminated needle or other sharp object; receiving blood transfusions or blood products or organ/tissue transplants that are contaminated with HIV; unsafe or unsanitary injections or other medical or dental practices; contact between broken skin, wounds, or mucous membranes and HIV infected blood or blood contaminated bodily fluids.[3]

In this case, Plaintiff maintains he was exposed on a single occasion to a clipper that contained the blood of an inmate who was HIV positive.  Plaintiff does not maintain he had any open cuts or that he was injured by the clippers in such a way as to allow for the transmission of HIV.  See e.g., Fair v. Crochet, 2010 WL 430806 (E.D. La. 2010)(allegation that inmate might have been

---

[1] http://www.cdc.gov/hiv/topics/basic/ (accessed January 26, 2012)

[2] Id.

[3] Id.

-8-

exposed to AIDS is insufficient to state a claim for relief).  The haircuts and shaves were voluntary. Plaintiff could have avoided exposure by choosing not to have his haircut or his shave that day.  We also note, Plaintiff has since been tested for HIV and was negative.

Similarly, the exposure was easily preventable by the disinfecting of the clippers between uses, as Defendants maintain their rules required, and as Defendant Shipley maintains he did.  Even if we assume Shipley did not disinfect the clippers between cuts, he maintains he "never cut an inmate while giving an inmate a shave or haircut that [he] knew to have HIV."

Considering the summary judgment record as a whole, I find no genuine issues of material facts exist as to whether there was a "pervasive risk of harm to inmates of contracting the AIDS virus," Marcussen v. Brandstat, 836 F. Supp. 624, 627 (N.D. Ia. 1993), and "a failure of prison officials to reasonably respond to that risk," Glick v. Henderson, 855 F.2d 536, 539-40 (8th Cir. 1988).

### IV. Conclusion

For the reasons stated, I recommend that Defendants' summary judgment motion (Doc. 33) be granted and this case dismissed.  Specifically, I recommend Plaintiff's failure to appear claim be dismissed without prejudice, see Schafer v. Moore, 46 F.3d 43, 45 (8th Cir. 1995)(dismissal of Heck banned claim should be without prejudice so Plaintiff can re-file if he satisfies the Heck requirements) and the claim regarding exposure to HIV be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are**

**reminded that objections must be both timely and specific to trigger de novo review by the district court.**

      DATED this 27th day of January 2012.

                                      /s/ *Erin L. Setser*
                                      HON. ERIN L. SETSER
                                      UNITED STATES MAGISTRATE JUDGE